

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-14-2006

# USA v. Byrd

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5351

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Byrd" (2006). *2006 Decisions.* Paper 94.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/94

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5351

UNITED STATES OF AMERICA

v.

MARK BYRD,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 04-00564-2)
Honorable Juan R. Sanchez, District Judge

Submitted under Third Circuit LAR 34.1(a)
December 14, 2006

BEFORE:  FISHER, CHAGARES, and GREENBERG, Circuit Judges

(Filed: December 14, 2006)

OPINION OF THE COURT

GREENBERG, Circuit Judge.

        This matter comes on before the court on an appeal by Mark Byrd from a judgment

of conviction and sentence entered in this criminal case on December 12, 2005, following

Byrd's conviction at a jury trial on a single count indictment charging him with bank

fraud in violation of 18 U.S.C. § 1344. The court appointed Byrd's trial attorney, who continues to represent him on this appeal, under the Criminal Justice Act. The court sentenced Byrd to a 24-month custodial term to be followed by a 5-year term of supervised release. In addition, the court required that Byrd pay restitution of $34,378.97. The district court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

We need not set forth the facts of the case at length because Byrd does not challenge the sufficiency of the evidence to support the conviction or the sentence imposed, including the provision for restitution. We, however, do summarize what happened as it is necessary to do so in order to explain our reasoning for disposing of the issues that Byrd does raise in their context.

The case centered on evidence that showed that Byrd created numerous fraudulent checks on a computer and that he provided the checks and false identification to cash the checks to a co-defendant, Chandra Cornelius, who attempted, sometimes successfully, sometimes not, to cash the checks at various banks. After Cornelius was arrested she implicated Byrd in the scheme.

Prior to the trial the parties made several motions, the dispositions of which are material at this time. In particular, Byrd sought an order allowing discovery and inspection of materials in the government's possession and an order suppressing evidence seized from him, while the government sought an order in limine under Federal Rule of Evidence 404(b) allowing evidence from a property seizure at Byrd's residence in 1999,

2

several years before he committed the crime charged here. The property was recovered in 1999 when the Philadelphia police seized computers and various check writing implements at Byrd's residence. The government's motion also sought, inter alia, to allow Cornelius's testimony as well as that of Donna Kuhn who allegedly had been involved in 1999 with Byrd in a scheme similar to that here.

On March 15, 2005, the district court filed a memorandum and order ruling on the pretrial motions. In its memorandum the court pointed out that by reason of Cornelius implicating him, the authorities arrested Byrd. The court explained that Cornelius negotiated 46 counterfeit checks totaling $34,378.97 from April 21, 2000, through October 6, 2000, and that Cornelius stated that Byrd provided the checks as well as false identifications to negotiate them. The court indicated that Byrd's fingerprint was identified on a check from D&G Eagle Enterprises, Inc. which allegedly was the template he used to create counterfeit checks that Cornelius used.[1]

Byrd sought to suppress proposed fingerprint evidence from a fingerprint analyst who identified Byrd's fingerprint on a fraudulent check. The court denied the motion as it believed that the fingerprint evidence was admissible under Federal Rule of Evidence 702 and United States v. Mitchell, 365 F.3d 215 (3d Cir. 2004). The court in reaching its decision made an analysis of the Mitchell factors for admissibility and indicated that Byrd

---

[1]In its opinion the court seemed to suggest that all of the counterfeit checks were drawn on the D&G Eagle account, but in its brief the government states that five of the checks were drawn on its account. The difference does not matter in our disposition of this appeal.

at trial could challenge the evidence through cross-examination. The court also denied Byrd's motion for discovery as the government represented that it supplied Byrd with the evidence that he requested that was seized at his home on January 28, 1999.

The court granted the government's motion in limine seeking to admit Cornelius's and Kuhn's testimony as well as the evidence seized from Byrd's home in 1999. The court said that the testimony was admissible under Federal Rule of Evidence 404(b) "to show that Byrd and the two women had a common plan" and was not intended to show that he had "a propensity to commit criminal acts." App. at 14. The court's disposition of the Rule 404(b) evidence was somewhat open-ended in that it allowed "testimony of other witnesses, consistent with this opinion, so long as their identities are provided by March 18, 2005," id., which was several days before the contemplated trial date.

Subsequently, on March 19, 2005, Byrd moved for reconsideration of the March 15, 2005 order and at that time he requested authorization under the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1), to employ a computer expert. In his motion he said that the government had provided him with additional discovery on March 17, 2005. Moreover, he asked for a continuance of the trial that was scheduled to start in three days. The court denied the continuance as it noted that it was Byrd's third request for a continuance and the case was ready to start. The court also denied Byrd's application to engage a computer expert as Byrd did not show that he needed one.

The trial started on March 21, 2005, with jury selection. At the trial, the evidence was consistent with the facts that the court set forth in its March 15, 2005 memorandum.

4

Significantly, Cornelius testified that Byrd gave her the counterfeit checks that she cashed and false identification for use in doing so. Furthermore, she testified that she saw Byrd make counterfeit checks. Overall, the government's case was strong and, as we have indicated, Byrd does not challenge the sufficiency of the evidence to convict him on this appeal.

Byrd raises four issues on this appeal: (1) The trial court erred in denying Byrd's motion for discovery; (2) The court erred in denying Byrd's March 19, 2005 motion for a continuance; (3) The court erred in denying Byrd authorization under the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1), to employ a defense expert witness; and (4) The court erred in granting the government's motion in limine.

The parties have some dispute over our standard of review. Byrd contends that questions "involving whether the trial court violated defendant's constitutional right to prepare an adequate defense are reviewed de novo," appellant's br. at vii, citing United States v. Devlin, 13 F.3d 1361 (9th Cir. 1994). He states, however, that in all other respects we are reviewing the district court's decisions on an abuse of discretion basis. On the other hand, the government contends that we review all questions before us on an abuse of discretion basis, citing United States v. Newman, 476 F.2d 733, 739 (3d Cir. 1973) (discovery question); United States v. Roman, 121 F.3d 136, 143 (3d Cir. 1997) (hiring psychiatrist pursuant to 18 U.S.C. § 3006A(e)(1)); United States v. Adedoyin, 369 F.3d 337, 341 (3d Cir. 2004) (continuance question); and United States v. Butch, 256 F.3d 171, 175 (3d Cir. 2001) (admission of evidence under Rule 404(b)). Appellee's br.

5

at 16, 25. We agree with the government with the caveat that we exercise plenary review over decisions involving the interpretation of the rules of evidence. See United States v. Givan, 320 F.3d 452, 460 (3d Cir. 2003). In point of fact, however, our standard of review does not matter because, even if we exercised plenary review, as Byrd suggests we should do, our result would be the one we reach.

We reject Byrd's first three issues for several reasons. To start with, Byrd's motions largely were untimely. Moreover, we do not see why Byrd needed the expert testimony, particularly inasmuch as he largely based his position on disputing the government's contention that he created the incriminating documents and that "[o]ne of the hard drives identified by the government was not taken from [him]." Appellant's br. at xi-xii. We also point out that Byrd, in part, sought the continuance because he received Jenks Act, 18 U.S.C. § 3500, material on March 17, 2005. Yet he was not entitled to that material until after the witnesses whose statements he sought had testified. Overall, we cannot discern how the court can be said to have erred in its disposition on Byrd's first three issues which essentially related to trial management.

Finally, we hold that the court did not err in admitting the Rule 404(b) evidence. Clearly, the evidence was introduced to demonstrate the existence of a common plan to commit the crimes rather than to show Byrd's criminal propensity. Surely it was admissible for that purpose. See Givan, 320 F.3d at 460-61.

For the foregoing reasons the judgment of conviction and sentence entered December 12, 2005, will be affirmed.

6